Information, Douglas Bachorn. Counsel, please proceed. May it please the Court, Mr. D'Elia, my name is Bruce Lesore and I represent Douglas Bachorn. This case was decided in Mr. Bachorn's favor by the arbitrator and is awarded 10%. The Commission affirmed and adopted the decision of the arbitrator. Sir, the Court vacated the Commission's decision, finding it against the manifest way of the evidence. The Court remanded the case to the Commission to enter a decision consistent with its findings. And that gives rise to a threshold question, does it not? My question is, is that a final and appealable order, and if it is, why is it a final and appealable order? I believe it's a final and appealable order because there is nothing left for the Commission to do. And that leaves the question before this Court, whether the decision of the Commission was against the manifest way of the evidence. And as in most black lung cases, the issues line up like dominoes. The first and primary decision is whether or not there is disease, and in this case it's pneumoconiosis. Once it's found that there is pneumoconiosis, the other issues kind of fall into line. And in this case, the Commission found there was pneumoconiosis. It relied on the opinions of Dr. Hauser and his peer-reader radiologist, Dr. Alexander. And the existence of those two experts is enough evidence to support the Commission on the question of disease. So basically your position is the Circuit Court substituted its judgment for that of the Commission? That's exactly right. They reweighed the evidence, came up with something else. What did the Circuit Court come up with? All they said was it was against the manifest way of the evidence, so I assume everything was against the manifest way of the evidence. We have to go by what the judge said. I'm not sure I agree that he made it final and said what to do, told the Commission. In that case, you're fine against it. I'm sorry, Your Honor. My opinion is that it was final and penal because there was nothing else for the Commission to do. They said the order was it's against the manifest way of the evidence. Enter a decision consistent with this, which would be a denial. Well, let me just pose this. One of the issues raised by the employer was under 19d, whether continuing to smoke was an injurious practice, which would result in a reduction of benefits. And so it's hard to tell what the Circuit Court meant. I mean, was that what was against the manifest way of the evidence? And if so, then they would go back to the Commission for a determination of whether benefits should be reduced. I think that in all the issues in the case, there's a manifest way element to them. There's a manifest way element to 19d. And since the Circuit Court decided to leave us just with it's against the manifest way of the evidence, my assumption was it's against the manifest way of the evidence on all of them. And so I think my duty here today is to show that there is evidence on each of those issues that will support the decision. And I kind of saved 19d for last, if you don't mind. Although my argument is only going to be about seven or eight minutes long. As I said, on disease, there was evidence to support the Commission. We had the pulmonologist and the B-reader radiologist. No matter how many are on the other side, that's enough evidence to support the Commission. Now there was a question as to whether Consall waived his argument on disease before the Commission and the issue of disease before the Circuit Court. But it really doesn't make any difference because the Commission resolved the conflicting evidence in favor of Mr. Bockhorn and his decision was not against the manifest way of the evidence. Now at one point in his brief, Consall confused Dr. Whitehead as being Mr. Bockhorn's expert and it talked about inconsistencies in Petitioner's argument because Dr. Hauser and Dr. Whitehead on one x-ray were both on a positive, but for different reasons. But Dr. Whitehead was Consall's expert, not Mr. Bockhorn's. As stated in the Commission's decision, it was Consall that submitted the radiographic opinions of Whitehead and Whitehead. There was no inconsistency in Petitioner's radiographic evidence. But even if there had been, the Commission could have resolved it in favor of Petitioner anyway. There's also a secondary issue raised by Consall and that's whether a CT scan should trump a B-read. And that question is also one that the Commission gets to make. It did and it gave its reasons. There's no question that a high-resolution CT scan can give you a better, high-quality image than a plain chest x-ray. It's a more modern tool. But that doesn't make it a better test in black lung cases. The Commission pointed out that the B-reader system provides sample films to compare the x-ray in question to. The B-reader actually looks at the minor films next to the sample films and decides which ones are the closest fit. None of that exists for CT scans. With a CT, the reader just says, I think it's negative or I think it's positive. And in addition, the Commission said that the CT doesn't have any standard protocols. And that means two things. First, the asset of the CT, what makes it good for treatment, is that you can adjust the algorithms and set it to emphasize the specific abnormality you're looking for. The problem is when you set it to emphasize one thing, it de-emphasizes other things. And the CT report won't tell us whether the settings made the search for pneumoconiosis easier or more difficult. And second, and this problem came up in this case, you can change the thickness of the slices and the intervals between the slices. And with this CT, Dr. Tudor said it was for 1 millimeter thick slices 10 millimeters apart. But Consall's other two experts, the ones who were actually radiologists, said the slices were 5 millimeters in thickness. And these are only two options. Even Dr. Tudor didn't know what he was looking at, and Dr. Wyatt and Dr. Whitehead didn't know what they were looking at. But the biggest point is that if you don't even know what kind of CT you're looking at, how can it be credible, your reading, when you're talking about what's in the CT? Consall argues that the report said there were 1 by 10 and 1 by 5 reconstructions. But again, if there were, they didn't send them to Wyatt and Whitehead. Because of all of this, the commission said Consall's evidence concerning the CT scan was questionable. A charitable look at that evidence. And here's where the dominoes, 2, 3, and 4, fall into place with pneumoconiosis. If you have the disease, you have to have disabled. Because by definition, you have an impairment in the function of your lungs, whether it can be measured or not. You can't return to the environment that gave you the disease without the chance of it progressing. And since the only thing that causes it is coal mining, the overwhelming odds are that it was there at some level when you left the coal mining. All of these realities were seen in the commission's decision. Now, on the issue of timely disablement, Section 1F, the commission found that Petitioner's timely complaint satisfied Section 1F. The medical testimony proved that his pneumoconiosis would have been present when he left coal mining, and that the scarring of pneumoconiosis represents impairment in the function of the lungs. As regards the trustworthiness of Petitioner's description of his complaints, the first of the commission's four listed findings was that he was a credible witness. Now, in his brief, Consall says that since Dr. Hauser testified, it's possible that Mr. Bachmar's pneumoconiosis could have first manifested itself more than two years after he left the mines. And his testimony that it really did exist when he left the mines was speculation. But Dr. Hauser defined his possibility as 1%. Now, you add that to Dr. Tudor's testimony that if you ever have pneumoconiosis in your life, you also had it to some degree when you left the mines. And at that point, you're as close to the medical certainty as you can get. The commission said that since there was pneumoconiosis, there was an impairment in function caused by scar tissue. And there was also testimony by both experts that if you have pneumoconiosis, you can't return to the coal mines without endangering your health. And the record supports both forms of disability. The commission finding that 1F was satisfied as supporting the record. Next issue, notice. Mr. Bachmar filed his claim within the statute of limitations. Filing of the claim was notice to the employer. And no claims of prejudice were even alleged by Consall. The commission finding that notice was adequate was supported by the record. And the last issue, section 19B. The question is whether the continued smoking habit would bar the claim. Is it an injurious practice that should affect the award? Well, this is a disease, not an injury. And in this particular case, it's a multifactorial breathing problem. Smoking causing problems, coal mine dust causing problems. However, the disease is pneumoconiosis. Now, smoking doesn't cause pneumoconiosis. It doesn't prevent pneumoconiosis. It doesn't cure it. Whatever damage there was from pneumoconiosis at the time Mr. Bachmar left mining would not disappear due to continued smoking or get worse. So at any time Mr. Bachmar is alive, his pneumoconiosis and its damage  But on this one, I don't know how Consall could apply 19B to this particular case anyway. Because when Mr. Bachmar stopped his coal mine exposure and increased his smoking habit, his PFDs went up instead of down. So if there's a relationship between those events as supported by this record, the mining exposures were the primary factor in his pulmonary limitations and his level of cigarette smoking was good for him. It doesn't make any sense. I'm not making that argument. I'm saying the opposite one doesn't make sense either. Now, all of the findings of the commission were supported by the record. None were against the manifest way of the evidence. And I ask you to reverse the circuit court's decision and reinstate the commission's award. Thank you. Counsel, please. Do you have anything to say about jurisdiction? Your Honor, the circuit court specifically found that the commission decision was against the manifest way of the evidence and vacated the decision and did issue an order remanding it back to the commission to issue a decision consistent with its findings. Which the commission would say what? Well, that's the problem. There weren't really any findings from the circuit court. They had the major finding, which was we find it to be against the manifest way to the evidence. And in all honesty, I can see why the circuit court got to that conclusion. But not allowing the commission the opportunity to, in this case, there was also a dissent in this case. So, you know, that might have had a factor to play in this as well. But we'll never know what the commission would have done on remand because it was appealed up here. And certainly there was more to do than just, I mean, they vacated the decision, but they didn't say, and you need to deny benefits. Which, in that case, then absolutely appealing up here would have been the correct decision because there would be no doubt that the commission would be denying benefits. In this case, they simply said we find it against the manifest way of the evidence. We're vacating the decision and we're remanding it. Well, it implies the commission is supposed to reverse itself and deny the claim. Isn't that the obvious implication of the circuit court remanding it? Well, to some extent it is. What's left for them to do? Well, they could go back in and that's the problem we get into without specific findings from the circuit court. Because certainly there were five statutes at issue in this case before the circuit court. And if you want to vacate their decision, they technically still could have found on remand that he had co-worker's pneumoconiosis. They could have found that he met 1F, but he didn't meet notice. They could find that he didn't meet 1F. They could find that maybe as a matter of law they should have considered Section 19D and not found it to be inapplicable, which is kind of saying we're just going to ignore this statute altogether. So there were a few things they could have done on remand beyond just deny it. And certainly if the circuit court said issue a decision denying benefits when it gets back down there, then yeah, it should definitely be up here on those facts. So what you're arguing now, doesn't that mean it's an interlocutory order? It very well could be. And like Mr. Widzor said, without any specific findings from the circuit court as to what they actually found to be against the manifest way that the evidence, certainly it could have gone back down to the commission. They could have issued a decision that would go back up. In the great grand scheme of things, it was certainly more timely for Mr. Bockhorn to simply come up than to go all the way back down since there was no direction from the circuit court. So what should we do? I'm sorry? What should we do? What should you do? Yeah. Well, if it went back down to the commission and they issued a decision denying benefits and it all ended up back up here, your first step would be to go back and look at the original commission decision to see if it was against the manifest way. Maybe we should send it back to Judge Drew and have her tell us what she intended. Again, that would be a helpful thing to have happen in this case given where we are. But at this point, you can only speculate what the commission would have done. You can speculate what the circuit court really meant and without sending it back down, we really don't know. With that said, when we were in front of the circuit court, we had numerous issues with regard to the commission decision. Basically, there are five statutes that are at play here. Section 1D, the finding of an occupational disease. They found poll workers with pneumoconiosis. And this manifest way. So is there evidence in the record to support that? Sure. We'll assume that to be correct. The problem we get into is the decision finds you then have disablement. And they find that the disablement date is November 3, 1999, which is the date that Mr. Bockhorn left the mine. Statute section 1F then says, well, you have to be disabled within two years after your last date of exposure, which would be November 3, 2001. They say he met that based on his timely pulmonary complaints. Now, the evidence in the record shows that his pulmonary system was excellent. His PFTs were well within the range of normal. They improved from when Dr. Hauser took them to when Dr. Tudor took them. I mean, the actual numerical values improved. This is not consistent with pneumoconiosis. You don't have improvement. It's a permanent, progressively disabling disease. So we have the exact opposite. So the only thing they could have based 1F on was him saying he had shortness of breath. Well, interestingly, when he goes to Dr. Hauser in December of 2004, he says he does not have shortness of breath. So then you get into, well, okay, we have Mr. Bockhorn saying this, we have Dr. Hauser saying this, who we find to be credible, and we have a set of medical records, which this isn't like the Hicks case where no one gets any treatment so it's not dispositive of whether or not the condition is timely. He goes to his treating doctor and says, I don't have any shortness of breath. Both before and after, he leaves the mine. So this is the only piece of evidence you have for 1F because that's what they base it on. It's not anything other than it was timely filed based on his timely pulmonary complaints. It was only shortness of breath. So then you move farther out. Okay, fine, he's disabled November 3, 1999. Okay, we'll go with it. Now you have to move to Section 6C. 6C is notice. Now we don't have 45 days like they do under the Work Compact. We have as soon as practicable. Let's all assume that Mr. Bockhorn was disabled on November 3, 1999. Notice was not provided to the employer until after November 3, 2004 because that is the date that the notice was issued by the commission. So we are five years out. That is not as soon as practical. And I know that the notice statute has been read extremely liberally by the commission and even by this court, but at this point we are now outside the five years. And if we're going to say you can give notice after five years, then why do we even have the statute? Because you've got to file the claim within five years. And even the case law has said filing the claim is good enough for notice. So it's our position that you cannot reconcile a finding of Section 1F for November 3, 1999 with a finding of notice for November 3, 2004, which was the date the notice was issued by the commission. And that's what our big argument was in front of the circuit court was that those two statutes couldn't be reconciled. And then we had the final statute, which was 19D, which interestingly, as Mr. Rezor points out, his PFDs did improve despite the fact that he was smoking two packs a day. The problem with the commission decision is they simply say that Section 19D is inapplicable. And while it's within the commission's discretion to decide if they want to apply it or use it or reduce the benefits because they find that someone's doing something that's imperiling, retarding recovery or imperiling their ability to get better, in this case you have to go back to the original complaint that we found for 1F, shortness of breath. He is smoking two packs of cigarettes a day. He has filed a claim for pulmonary impairment. I can't think of a more applicable case than a case for pulmonary benefits and a two-pack-a-day smoker where 19D should at least be considered. Not saying the commission has to do it, but the commission should be considering it in these sort of cases. And in this they just say, well, it's not even applicable. It's like all the statutes are applicable. Now if you choose not to reduce the benefits for some reason, fine. But they are all applicable. And while Mr. Resorce says they all fall in line like dominoes, they really don't in this case. You've got a huge five-year gap between when he leaves the mine, when he files his claim. He's not examined by Dr. Hauser until December of 2004. And one thing Mr. Resorce said earlier is the commission's decision was based on Dr. Hauser and Dr. Alexander. That's not correct. What the commission's decision was based on was Dr. Whitehead and Dr. Hauser. Because then we have that neat little paragraph that says how great Dr. Whitehead and Dr. Westerfield are for the lure of the old then case. And Dr. Whitehead read the 2004 film as negative. He reads the 2005 film as positive, but then he gets the 2005 CT scan and says, no, there's nothing there. So you have all of this evidence in the record which leads to a conclusion that some of these statutes are either being ignored or glossed over because you can't meet all five of them based on the evidence in this record. And that's why we have asked the court to affirm the circuit court's finding that the decision was against the manifest way of the evidence. And certainly if you did I would appreciate you adding a little more clarity than what the circuit court provided. But that's the basis of what we appealed in the first place and that's what was put in front of the circuit court. And certainly if you don't believe you have jurisdiction, then it should either go back down to the circuit court for a little more information or down to the commission to issue a second decision. Are there any questions? Thank you. On matters of law, no deference is given to the commission. On matters of fact, great deference is given to the commission. Note that the arguments that Consuelo makes today were all manifest way arguments. And each issue that is in this case can be resolved in a manifest way manner. What about this time gap that she's talking about, five years? Well, the problem there is what the definition of time gap means. Yeah, there's five years or close to it between when he left the mine and when he filed his claim. But there was only 60 days between the time he got his first diagnosis of pneumoconiosis and when he filed his claim. So I don't think it's practical to assign the coal miner the responsibility to know he's got the disease before he gets his x-ray and knows. And so my definition of as soon as practical would start to run when the guy knows he's got the disease. In this case, it's only 60 days. And I would think, and also, as I say what I would do, I realize that I'm using the wrong words. The circuit court gets to decide, I mean, pardon me, the commission gets to decide if it's as soon as practical. And they looked at these facts, and they evidently thought that 60 days after finding out she got the disease, that's enough. That's as close as I can get to that, I think. Now, whether 19D is applicable or inapplicable, Consal says that there's impairment here, and that's a question that ought to be dealt with. Their problem is that the impairment of pneumoconiosis is not the impairment that cigarette smoking causes. And the commission says so. Pneumoconiosis causes scar. And every time they talked about impairment, they talked about the scar. And that being something that's permanent and causes impairment, whether you can measure it or not. In fact, I would refine that a little bit and say you can measure it in that you can see it. It's an impairment you can see on the x-ray, although the pulmonary function test may not be good enough to show it. Now, in that paragraph that counsel was referring to about Dr. Whitehead, the commission referred to him, what they were saying is that even one of Consal's experts found pneumoconiosis on one of the x-rays. And I think that's another thing that tilts it toward a petition. However, again, even if Dr. Whitehead had found them all negative, like a baby's lungs, the commission still would have evidence in the record that would support its decision in favor of Dr. Whitehead and Dr. Houser and Dr. Alexander. With respect to the jurisdiction issue, is it your position that the trial court order simply told the commission to deny benefits? Yes. When I read that, I don't see anything the commission can do except to deny benefits. Okay. Thank you, counsel. The court will take the matter under advisement for disposition.